STATE OF NORTH CAROLINA v. MACK EDWARD JONES

No. 7419SC670

(Filed 2 October 1974)

1. Homicide § 26— second degree murder — instructions — proximate cause — foreseeability

   It was not necessary for the court to instruct on foreseeability as an element of proximate cause in a prosecution for second degree murder of defendant's wife by shooting her with a pistol.

2. Criminal Law § 45— experimental evidence — admissibility

   In a second degree murder prosecution, the fact that defendant contended he was grabbing for the death weapon as it fell toward the floor and that he was not sure it hit anything when it fired did not render inadmissible experimental evidence that the weapon would not fire by being dropped onto a board from various heights unless the grip safety was depressed.

3. Criminal Law § 45— experimental evidence — admissibility

   Experimental evidence showing that a pistol would not fire by being dropped unless the grip safety was depressed was not inadmissible on the ground there was no evidence that the pistol was in substantially the same condition as of the day it was used in a killing where the pistol was in working order and was tested less than three weeks after the shooting, a chain of custody was established whereupon the pistol was delivered to a firearms expert, and there was testimony that no one before the expert tested the weapon so as to alter

its condition; nor was such evidence rendered inadmissible by the fact it contained eight cartridges on the day of the shooting but only one primed cartridge during the testing.

**4. Homicide § 21— intent to kill — sufficiency of evidence**

In this prosecution for second degree murder, there was sufficient evidence of the circumstances to submit the case to the jury on the question of defendant's intent to kill.

**5. Homicide § 30— submission of lesser offense — harmless error**

In a prosecution for second degree murder, submission to the jury of an issue of voluntary manslaughter, if erroneous, was not prejudicial to defendant.

APPEAL by defendant from *Crissman, Judge,* April 1974 Criminal Session of Superior Court held in CABARRUS County. Heard in the Court of Appeals 5 September 1974.

Defendant was charged in an indictment with first-degree murder of his wife on 17 July 1971. He was placed on trial for second-degree murder or any lesser included offense. The defendant pleaded not guilty.

The victim was killed by a bullet which entered her chest thirteen and one-half inches from the top of her head and exited her back sixteen and one-half inches from the top of her head. The defendant called the sheriff's office to inform them that he had shot his wife. The victim was found in the bathroom sitting on the toilet and was dead. The spent bullet was found on the floor of the bathroom. The pistol was the defendant's and was found lying on a table in the den. The pistol was a .32-caliber automatic which was turned over to a firearms expert seventeen days after the shooting on 17 July 1971. The expert found the weapon to have two safety devices, a thumb lever safety and a grip safety. The latter type safety must be depressed while the trigger is pulled in order to fire the weapon. The expert performed some tests and experiments on the weapon to determine whether the pistol would fire without simultaneous depression of the grip safety.

He performed two tests, one with the grip safety untaped and one with it taped down. In the former test, he dropped the pistol from six inches, twelve inches on up through forty-two inches onto its handle landing on a piece of wood. In each case the weapon failed to fire. In the taped grip test, the weapon fired when it was dropped from eighteen inches. These tests were performed twice. There was one primed bullet in the car-

tridge case in each of the tests. The expert testified that the pressure of a normal grip would release the grip safety on the pistol; that when the pressure was released, the safety would spring back out; and that, consequently, if the gun were dropped on a protrusion, it would depress the safety. The expert also admitted that if the pistol were being grabbed about the handle at the moment it hit the floor, that it could discharge a round. All of this evidence was admitted over the defendant's objection.

The defendant testified that he had gone to use the bathroom; that he was carrying a pistol in his pocket because he had had some trouble with robberies; that he removed the pistol from his pocket to use the toilet; that then his wife came in to use the toilet and he stayed for a few moments to talk with her while she used it; that they began a discussion; that he had the pistol either in his left hand or left pocket at that time; that he switched the pistol to his right hand and spun the pistol over on his finger; that he dropped it and that while grabbing at it as it was on the floor or right at the floor level, it discharged hitting his wife.

Further witnesses were offered by the defendant for the purpose of corroborating him in his claim that the pistol discharged by accident. His 13-year-old son testified that he saw his father while standing in the hall to the bathroom twirling the gun and that it fell; and as his father grabbed for it, it went off. The jury returned a verdict of murder in the second degree whereupon the defendant was sentenced to not less than 25 nor more than 30 years in the State Prison.

The defendant appealed.

*Attorney General Robert Morgan by Assistant Attorney General T. Buie Costen for the State.*

*Clarence E. Horton, Jr., for the defendant appellant.*

CAMPBELL, Judge.

This is the second time this case has been before us. It appears the first time in 19 N.C. App. 395, 198 S.E. 2d 744 (1973).

[1]  The defendant first contends that the trial court erred in its definition of proximate cause in its charge to the jury for that the element of foreseeability was omitted.

In this case, the defendant was indicted for first-degree murder and was tried and found guilty of murder in the second degree. The jury found the defendant guilty of unlawfully and intentionally killing his wife with malice. Foreseeability was irrelevant in this criminal case involving a killing by shooting with a firearm.

Next the defendant contends that the trial court erred in admitting evidence of certain experiments with the death weapon. He specifically argues that there was no evidence that the pistol was in substantially the same condition as on the day of the killing; that the firearms expert could not testify as to whether the pistol was mechanically damaged; that the pistol had only the primed bullet in it rather than a clip of eight as was established at trial and that the expert only dropped the pistol onto a board which is not a similar condition as compared to defendant's testimony that he was grabbing at it and was not sure it hit anything.

"When the experiment is carried out under substantially similar circumstances to those which surrounded the original transaction, and in such a manner as to shed light on that transaction, the results may be received in evidence . . . . Whether the circumstances and conditions are sufficiently similar . . . is of course a preliminary question for the court, and unless too wide of the mark, the ruling thereon will be upheld on appeal." *State v. Phillips*, 228 N.C. 595, 598, 46 S.E. 2d 720, 722 (1948). If the experimental evidence contributes to the end of finding the truth of the matter in question, it should be admitted. 22A C.J.S., Criminal Law, § 645(1), p. 519. The measure of variation allowed between circumstances surrounding the original transaction and that of the experiment is generally tested by the tendency of the variation to confuse the jury. See *State v. Phillips, supra.*

[2] The purpose of submitting the results of the tests in this case was manifest, to-wit, that a pistol with a grip-type safety is so constructed that it will not discharge upon being dropped on its handle from various heights. This merely showed the jury that the pistol would not fire by being dropped unless the grip safety was depressed. It did not rule out the possibility as brought out on cross-examination, that the defendant could have grabbed the gun simultaneously with it striking the floor and have it fire. The fact that the defendant contends he was grabbing at the pistol as it fell does not render the test evidence

inadmissible. The variation was brought out and was not such that it would confuse the jury.

[3] The other contentions of the defendant relating to the experiments were also without merit. A chain of custody was established whereupon the gun was finally delivered to the firearms expert. There was testimony that no one before the expert tested the weapon so as to alter its condition. The expert personally fired the pistol prior to the tests to match ballistics with the death bullet. The pistol was in working order and was tested less than three weeks after the shooting. Further, the fact that the pistol had eight cartridges in it on the day of the shooting and only one primed cartridge in it during the testing is not such a variation that it would destroy the utility of the test and confuse the jury. "The want of exact similarity would not perforce exclude the evidence, but would go to its weight . . . . " *State v. Phillips, supra,* at 598, 46 S.E. 2d 722. There was no abuse of discretion here in allowing the State to introduce this evidence.

[4] The defendant contends that the trial court erred in failing to dismiss the case as of nonsuit. In a motion for nonsuit, the trial judge is required to consider the evidence in the light most favorable to the State and give the State the benefit of every reasonable inference to be drawn therefrom. *State v. McNeil,* 280 N.C. 159, 185 S.E. 2d 156 (1971). The defendant contends that there was not enough evidence of "intent" to prove second-degree murder. "Intent," however, is a mental emotion or attitude which is seldom capable of direct proof and which must ordinarily be proven by circumstances from which it may be inferred. *State v. Arnold,* 264 N.C. 348, 141 S.E. 2d 473 (1965). These circumstances must be weighed and considered by a jury. There was sufficient evidence of the circumstances to submit the case to the jury on the question of the defendant's intent to kill.

[5] The defendant's last contention of error was that the trial judge erred in charging the jury on the offense of voluntary manslaughter. It was argued that there was no evidence of "heat of passion" to support such a charge. This is without merit and, at most, harmless error and not prejudicial to the defendant.

We find no prejudicial error.

Affirmed.

Judges PARKER and VAUGHN concur.